IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DAWNIQUE STEEL, )
)
    Plaintiff, )
)
v. ) CASE NO. CV416-313
)
TRAVELERS PROPERTY CASUALTY )
INSURANCE COMPANY, )
)
    Defendant. )
_____)

## O R D E R

Before the Court is Defendant Travelers Property Casualty Insurance Company's Motion for Summary Judgment. (Doc. 26.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim based on water damage to the interior of the home will proceed to trial. However, Plaintiff's claim based on the loss of personal property and damage to window shutters is **DISMISSED**.

### BACKGROUND

In early June 2015, Plaintiff Dawnique Steel's home suffered roof damage from a hailstorm.[1] (Doc. 26, Attach. 1

---

[1] Because Plaintiff is the non-moving party, the Court construes the evidence in the record and all reasonable factual inferences in Plaintiff's favor when ruling on

at 2.) At that time, Plaintiff's home was covered under an insurance policy issued by Defendant. (Id.) On June 16, 2015, Plaintiff's husband, Art Steel, notified Defendant of the damage to the roof and associated water damage to the interior of the home. (Doc. 28 at 3.) Soon thereafter, Mr. Steel also informed Defendant of hail damage to the shutters and screens, as well as water damage to personal items that were stored in the attic. (Doc. 28, Ex. E at 1.)

Defendant's claim adjuster made an appointment with Mr. Steel to inspect the damage on June 18, 2015. (Doc. 26, Attach. 2 ¶ 7.) Just prior to the scheduled time, Mr. Steel notified the claims adjuster that neither he nor Plaintiff would be able to attend the inspection, but that the adjuster was free to inspect the property. (Id. ¶ 8.) Because neither Plaintiff nor Mr. Steel was present, the adjuster was unable to inspect the interior of the home. (Id. ¶ 10.) For safety reasons, the adjuster was also unable to access the roof of the home. (Doc. 26, Attach. 1

---

Defendant's Motion for Summary Judgment. See Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). However, the Court is not required to assume the truth or accuracy of mere speculation or conjecture. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

at 2.) As a result, a second inspection was scheduled for July 1, 2015. (Id.)

At the second inspection, the adjuster confirmed damage to a majority of the roof. (Id.) On July 13, 2015, Defendant issued to Plaintiff a payment of $10,601.62 as the replacement cost for the roof, minus depreciation and Plaintiff's deductible. (Id. at 2-3.) Once again, however, the adjuster was unable to inspect the interior of the home because neither Plaintiff nor Mr. Steel was available to attend the inspection. (Id. at 3.)

On August 11, 2015, the adjuster conducted a third inspection and was able to access the interior of the home. (Id.) The adjuster observed water damage to the ceilings of the master bath and upstairs landing. (Id.) The only personal property the adjuster was able to inspect was a damaged television. (Id.) Based on this inspection, Defendant revised the replacement cost for the damage to $19,320.04, informing Mr. Steel of the revision on August 26, 2015. (Id.) According to Plaintiff, the adjuster was unable to inspect the remainder of the damaged personal

property because Mr. Steel had disposed of those items due to their wet and mildewed condition. (Doc. 28 at 3.)

Mr. Steel complained that the revised estimate was too low. (Doc. 26, Attach. 1 at 4.) Specifically, Mr. Steel informed Defendant that the carpet upstairs was damp and would have to be replaced, and the estimate did not include the damaged shutters and ruined personal items that were in the attic. (Id.) On September 8, 2015, the adjuster informed Mr. Steel that he was waiting for documentation regarding the additional claimed losses. (Id.) On September 16, 2015, Mr. Steel responded that he was working on generating an estimate for the various clothes and shoes that were damaged. (Id.) Ultimately, Plaintiff did not provide that information until May 5, 2016 in the form of a demand letter from an attorney. (Id.)

On October 5, 2015, Defendant issued another payment for additional roof repairs and damage to the residence's interior. (Id. at 4-5.) On October 14, 2015, Mr. Steel informed Defendant that he observed mold in the area of the interior water damage and adjacent air vents. (Id. at 5.) Mr. Steel also complained that there might be mold under

the upstairs carpet. (Id.) Defendant scheduled another inspection for October 23, 2015, which was cancelled by Mr. Steel. (Id.)

Following receipt of the May 5, 2016 demand letter, the parties agreed to another inspection, scheduled for May 27, 2016. (Id.) On that date, the adjuster observed mold in an upstairs linen closet and damage to twenty-seven window screens. (Id.) The adjuster was unable to examine the damaged shutters because Plaintiff replaced them prior to the inspection. (Id.) Defendant requested another inspection, this time by experts to determine the source of the mold in the linen closet. (Id.) This request and several follow-up calls went unanswered. In the interim, Defendant issued an additional payment of $678.15 for replacing the damaged window screens.

On October 13, 2016, Plaintiff filed suit in the State Court of Chatham County. (Doc. 1, Attach. 1.) In her complaint, Plaintiff alleges[2] that Defendant breached its contract of insurance with Plaintiff by "failing to address the damages to Plaintiff's personal and real property."

---

[2] Based on this Court's review, Plaintiff has not alleged a bad-faith claim under O.C.G.A. § 33-4-6.

5

(Id. ¶ 15.) Pursuant to 28 U.S.C. § 1332, Defendant invoked this Court's diversity jurisdiction and promptly removed the case to this Court. (Doc. 1.)

As part of discovery in this case, Defendant was finally able to have its experts inspect the mold in the linen closet. (Doc. 26, Attach. 1 at 6.) According to their report, the mold and water damage in the linen closet was probably caused by a leaking drain pan for the air handlers, not the original hail damage to the roof. (Id. at 6-7.) The dark discoloration was determined to be particulate build-up rather than mold. (Id. at 7.) The house did have elevated levels of airborne mold in places, but Defendant's experts concluded that those levels were unrelated to the hail damage.[3] (Id.)

Defendant now seeks summary judgment. In its motion, Defendant argues that Plaintiff has failed to establish that the hail damage to the roof caused the interior water

---

[3] According to Defendant, Plaintiff claims to have conducted mold testing prior to the April 6, 2017 inspection. (Doc. 26, Attach. 1 at 7.) At her deposition, Plaintiff disclosed that she had the home tested and that it confirmed the presence of mold in the linen closet and elevated levels of airborne mold. (Doc. 28, Ex. A 58:2-62:2.) However, no results or opinions from that testing were made a part of the record in this case.

6

and mold damage. (Id. at 9-10.) Also, Defendant maintains that Plaintiff failed to comply with the terms of the insurance policy because Defendant was never permitted to inspect the damaged personal property and shutters (id. at 10-13), and Plaintiff failed to mitigate her damages (id. at 13-15).[4]

In response, Plaintiff presents a series of arguments that are only loosely responsive to Defendant's motion. First, Plaintiff contends that the interior water damage is covered under the policy, either as damage due to a storm or damage caused by accidental discharge from an air unit. (Doc. 28 at 6-10.) Second, Plaintiff maintains that the chain of emails, documents, and other evidence establishes that Plaintiff attempted to cooperate with Defendant to investigate and resolve her claim. (Id. at 11-13.) Finally, Plaintiff argues that she properly attempted to mitigate her damages. (Id. at 13-14.)

---

[4] Defendant also contends that Plaintiff's recovery is limited to the actual cash value of any repairs or replacement. (Doc. 26, Attach. 1 at 15-20.) This is an issue of damages, not liability. Even assuming Defendant is correct, this issue is better resolved either through a motion in limine prior to trial or an appropriate jury instruction.

**ANALYSIS**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears
> the initial responsibility of informing the

>district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

I.  COVERAGE FOR INTERIOR WATER DAMAGE AND MOLD

In this case, both parties appear to agree that the losses based on the interior water damage and mold would be covered under the policy if caused by the roof damage sustained during the hailstorm. Therefore, the dispositive issue with respect to this portion of Plaintiff's claim is whether she has identified sufficient evidence in the record to permit a reasonable jury to conclude that the source of the interior water damage and mold was the damaged roof. Defendant has offered two expert opinions. A professional engineer opines that the interior water damage was most likely caused by a leaking drip pan associated with the air handler. (Doc, 26, Attach. 1 at 9-10.) Second, an industrial hygienist states that the elevated airborne mold levels are unrelated to the damaged roof. For her part, Plaintiff generally contends that conflicting evidence and theories concerning the source of the damage and mold create a genuine issue of material fact that must be resolved by a jury. (Doc. 28 at 6-10.)

After reviewing the record in this case, the Court concludes that an issue of material fact exists as to the source of the interior water damage and airborne mold. While underwhelming, a reasonable jury could rely on the evidence in the record to conclude that the source of the

damage and mold was the roof and not the air handler. Roof leaks commonly cause interior water damage, along with the possibility of elevated mold levels. Moreover, the sources of leaks from damaged roofs are often difficult to properly identify and repair. The record supports the notion that Mr. Steel continuously complained about unrepaired damage that he believed was caused by the original hail damage to the roof. As a result, the Court is satisfied that Plaintiff has identified sufficient evidence upon which a jury could rely in concluding that the interior water damage and mold was caused by the hail damaged roof.

To be fair, Defendant presents a far stronger case concerning the source of the damage and mold. Two apparently well-qualified experts both concluded that the likely source of the damage and mold was a leaking air handler, not a leaking roof. Plaintiff's questionable decision not to back up her theory with any additional evidence, particularly an expert witness supporting her theory, nearly proved fatal to her claims at this stage. The Court cannot help but think that any continued failure on Plaintiff's behalf would be catastrophic should a trial be necessary in this case. In any event, the Court is not permitted to weigh the evidence at this stage, which almost overwhelming tilts in Defendant's favor. By a rather slight

margin, therefore, the Court concludes that Defendant is not entitled to summary judgment on this portion of Plaintiff's claim.

II. <u>COVERAGE FOR PERSONAL PROPERTY AND SHUTTERS</u>

Defendant argues that it is entitled to summary judgment with respect to the damaged personal property and shutters because Plaintiff failed to preserve and exhibit these items upon request. (Doc. 26, Attach. 1 at 10-13.) Under Georgia law, "[a]n insurer is entitled to require its insured to abide by the policy terms, and the insured is required to cooperate with the insurer in investigation and resolution of the claim." <u>Farmer v. Allstate Ins. Co.</u>, 396 F. Supp. 2d 1379, 1382 (N.D. Ga. 2005) (quoting <u>Diamonds & Denims, Inc. v. First of Ga. Ins. Co.</u>, 203 Ga. App. 681, 683, 417 S.E.2d 440, 441 (1992)). Furthermore, the failure to comply with policy provisions, which become conditions precedent to filing suit, operates as a breach of the insurance contraction and precludes recovery as a matter of law. <u>See</u> <u>Farmer</u>, 396 F. Supp. 2d at 1382; <u>Bowers v. Safeco Ins. Co.</u>, 187 Ga. App. 229, 230-31, 369 S.E.2d 547, 549 (1988).

In this case, the insurance policy requires the insured to "show the damaged property" to the insurer "as often as [it] reasonably require[s]." (Doc. 28, Ex. J at

12

40.) What is clear in this case, is that Plaintiff failed to comply with this requirement. In her response, Plaintiff freely admits that the items in the attic were removed because they were wet and mildewed. (Doc. 28 at 3.) With respect to the shutters, Plaintiff simply states that she sent to Defendant receipts for their repair and reinstallation. (Id. at 4.) Plaintiff has failed to identify any evidence in the record that she showed to Defendant the damaged property.

Perhaps cognizant of this shortcoming, Plaintiff advances the idea that presenting the damaged property is unnecessary because she continuously informed Defendant that the items were damaged and also provided documentation concerning the cost to repair the shutters. However, those efforts are an insufficient substitute and this case presents a good example of why.

Plaintiff claimed that the ruined items in the attic were valued at over $26,000. While this is not necessarily suspicious, Plaintiff's itemized list cast considerable doubt on that assessment. According to Plaintiff, the items included 18 pairs of shoes valued at anywhere from $250 to $995, for a total of $12,702; a $1,300 Christmas wreath; four other wreaths totaling $1,220; and three Christmas stockings totaling $387. (Doc. 28, Ex. E at 4-8.) The Court

freely acknowledges the very real possibility that Plaintiff's assessment is accurate. However, prudent insurers require the insured to present the damaged property lest they have the misfortune of insuring that one suburban home with an authentic Van Gogh in the attic.

With respect to the shutters, Plaintiff did provide Defendant with a receipt for their repair and reinstallation. (Id. at 9.) However, the Court notes that the repairs were performed by Mr. Steel's brother, Mr. Cornell Williams. (Id., Ex. G ¶ 2 (affidavit of Cornell Williams stating "I am the brother of Art Steel, Sr., whose family's home and personal items were damaged as a result of a hail storm in June of 2015.").) Again, the Court is not implying any wrongdoing. However, given the close nature of Mr. Steel and Mr. Williams, it is entirely reasonable for Defendant to require that it be able to inspect the damaged items prior to covering any loss. Plaintiff failed to provide Defendant that opportunity and, as a result, is now precluded from recovering for those losses.

III. FAILURE TO MITIGATE

Defendant contends that Plaintiff's claim must be dismissed because she failed to mitigate her damages. (Doc. 26, Attach. 1 at 13-15.) The insurance policy requires the

14

insured to "protect the property from further damage," and "make reasonable and necessary repairs to protect the property." (Doc. 28, Ex. J at 40.) While unclear, it appears that Defendant's general argument is that Plaintiff failed to timely repair the damaged portions of the interior.

However, Defendant seems to completely ignore that Plaintiff's failure to perform those repairs must have resulted in the property sustaining additional damages. The insurance policy only requires Plaintiff to act "to protect the property from <u>further</u> damage." (<u>Id.</u> (emphasis added).) Obviously, mitigation of damages is a highly fact-bound inquiry not easily susceptible to resolution on summary judgment. In this case, Defendant has not even attempted to identify the additional damages that could have been prevented by any specific repairs Plaintiff allegedly should have undertaken. Accordingly, this argument does not entitle Defendant to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim based on water damage to the interior of the home will proceed to trial. However,

Plaintiff's claim based on the loss of personal property and damage to window shutters is **DISMISSED**.

SO ORDERED this 15th day of March 2018.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA